Slip Op. 09-41

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THYSSENKRUPP MEXINOX S.A. de C.V., et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, et al., <br><br> Defendants, <br><br> - and - <br><br> AK STEEL CORPORATION, ALLEGHENY LUDLUM CORPORATION, NORTH AMERICAN STAINLESS, <br><br> Defendant-Intervenors. | Before: Pogue, Judge <br><br> Court No. 06-00236 |

**OPINION**

[Plaintiffs' motion to amend complaint is denied.]

Dated: May 13, 2009

Hogan & Hartson LLP (Lewis E. Leibowitz, Jonathan L. Abram, H. Christopher Bartolomucci, Helaine R. Perlman and Brian S. Janovitz) for the Plaintiffs.

Michael F. Hertz, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Franklin E. White, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael J. Dierberg) for the Defendants.

Kelley Drye & Warren, LLP (Mary T. Staley, Daniel P. Lessard and David A. Hartquist) for the Defendant-Intervenors.

**Pogue, Judge:** This action involves the distribution to affected domestic producers, pursuant to the Continued Dumping and

Subsidy Offset Act of 2000 ("CDSOA" or "Byrd Amendment"),[1] 19 U.S.C. § 1675c (2000), of antidumping ("AD") duties assessed and collected on imports of certain steel products from Mexico. In their complaint, Plaintiffs claim, correctly, that the Byrd Amendment may not be applied to AD duties on goods from Mexico.

Currently before the court is Plaintiffs' motion to amend that complaint to add (1) a new cause of action, for unjust enrichment, against the Defendant-Intervenors, Plaintiffs' domestic competitors, for receiving and retaining distributions under the Byrd Amendment of AD duties collected upon the entry into the U.S. of Plaintiffs' goods, and (2) a claim for injunctive relief requiring the Defendant-Intervenors to disgorge those illegally-received distributions.

As will be explained further below, because Plaintiffs' unjust enrichment action is duplicative of Plaintiffs' original complaint

---

[1] The CDSOA, effective October 1, 2000, amended Title VII of the Tariff Act of 1930 to add section 754, among other provisions. See Pub. L. No. 106-387, § 1(a) [Title X, § 1003(a)], 114 Stat. 1549, 1549A-73 to 1549A-75. Section 754(a), in pertinent part, read:

> Duties assessed pursuant to a countervailing duty order, an antidumping duty order, or a finding under the Antidumping Act of 1921 shall be distributed on an annual basis under this section to the affected domestic producers for qualifying expenditures.

19 U.S.C. § 1675c(a) (2000). Congress repealed the Byrd Amendment on February 8, 2006 as part of the Deficit Reduction Act; however, the repeal applies only to duties on entries of goods made and filed on or after October 1, 2007. See Pub. L. No. 109-171, 120 Stat. 4, 154 (2006).

Court No. 06-00236                                                    Page 3

and unnecessary to the just resolution thereof, and because a provision in the American Recovery and Reinvestment Act of 2009, H.R. 1, Pub. L. No. 111-5, §§ 1-7002, 123 Stat. 115, 115-521 (2008) ("ARRA") has rendered moot Plaintiffs' request for additional injunctive relief, Plaintiffs' motion to amend is denied.[2]

**I.**

The court has previously concluded that the U.S. Customs and Border Protection ("Customs")[3] interpretation of the Byrd Amendment -- to permit distribution to affected domestic producers of AD duties collected on goods from NAFTA countries –- is contrary to law. Canadian Lumber Trade Alliance v. United States, __ CIT __, __, 425 F. Supp. 2d 1321, 1373 (2006) ("CLTA I"), vacated in part on other grounds, 517 F.3d 1319 (Fed. Cir. 2008) ("CLTA II"), cert. denied, 129 S. Ct. 344 (2008).  In CLTA I, the court held that the Byrd Amendment, read in conjunction with section 408 of the North American Free Trade Agreement ("NAFTA") Implementation Act, "states that [Byrd Amendment] distributions should be made from duties collected pursuant to antidumping and countervailing duty orders except for duty orders on goods from Canada or Mexico."[4] CLTA I,

---

[2] Because the parties' briefs in this matter ably address the issues raised, the court also denies Plaintiffs' Motion for Oral Argument.

[3] Customs is the federal agency responsible for collecting antidumping duties and distributing said duties to domestic industry pursuant to former 19 U.S.C. § 1675c (2000).

[4] Like Canada, of course, Mexico is a NAFTA country.

Court No. 06-00236                                                  Page 4

425 F. Supp. 2d at 1372 (emphasis in original).

On appeal of CLTA I, the Federal Circuit affirmed in part and vacated in part. See CLTA II, 517 F.3d at 1344 (vacating the court's judgment on the agency record as to lumber and magnesium plaintiffs on grounds of mootness, but otherwise affirming the court's judgment, though on other grounds with regard to the government of Canada's standing to bring the lawsuit).

The case at bar constitutes the Mexican analog to CLTA I. Thyssenkrupp Mexinox S.A. de C.V. ("Thyssenkrupp"), a Mexican corporation, manufactures and exports stainless steel sheet and strip ("SSSS") products to the United States. Mexinox USA, Inc. ("Mexinox")[5] imports, markets and distributes Thyssenkrupp's products into the U.S. Plaintiffs' steel products are subject to a July 27, 1999 antidumping duty order that is still in force. See Stainless Steel Sheet and Strip in Coils From Mexico, 64 Fed. Reg. 40,560 (Dep't Commerce July 27, 1999) (notice of amended final determination of sales at less than fair value and antidumping duty order) ("the antidumping duty order"). Up to and through October 1, 2007, Defendants United States, Customs and W. Ralph Basham, then-Commissioner of Customs[6] (collectively, "the government") have collected AD duties on Plaintiffs' imports, and, pursuant to the

---

[5] Mexinox is a U.S. company, incorporated in Texas, and is Thyssenkrupp's wholly-owned subsidiary.

[6] Jayson P. Ahern is currently the Acting Commissioner of Customs.

Court No. 06-00236 Page 5

Byrd Amendment, have paid a significant portion of the duties so collected to certain "affected domestic producers," see 19 U.S.C. § 1675c(a)-(b) (2000), which Plaintiffs allege include AK Steel Corp., Allegheny Ludlum Corp. and North American Stainless (collectively, "Defendant-Intervenors") and other of Plaintiffs' direct competitors.[7] Plaintiffs further allege that, upon final liquidation of all pre-October 2007 imports, Customs will distribute the remainder of the AD duties so collected in accordance with the CDSOA.[8]

Plaintiffs' original complaint, filed in July 2006, requested declaratory relief. In addition, Plaintiffs' action sought a

---

[7] Plaintiffs allege that the government illegally distributed approximately $12 million in duties collected from goods imported by Plaintiffs prior to the 2004 fiscal year, and approximately $11 million in duties collected from goods imported by Plaintiffs for the 2004 and 2005 fiscal years. Pls.' [Proposed] Amended Compl. ¶ 4. Defendant-Intervenors AK Steel Corp., Allegheny Ludlum Corp. and North American Stainless claim to have received CDSOA disbursements totaling $5,536,218, $2,449,596 and $2,073,793, respectively, from the antidumping duty order during the 2004 and 2005 fiscal years, and other disbursements from the order prior to 2004. Consent Mot. of AK Steel Corp., Allegheny Ludlum Corp., and North American Stainless to Intervene as Defs. 2.

[8] Although Customs announced that no further CDSOA distributions would be made from duties collected from Canadian or Mexican exports, this announcement limited its effect "pending the outcome of any appeal" in CLTA. Notice of Withholding of Certain Distributions on Continued Dumping and Subsidy Offset to Affected Domestic Producers, 71 Fed. Reg. 57,000 (U.S. Customs & Border Protection Sept. 28, 2006). As final judgment has been entered in CLTA, this notice is no longer in effect. However, the government is still enjoined from making said distributions by order of the court. See infra.

permanent injunction prohibiting future CDSOA disbursements of AD duties paid by Plaintiffs and directing Customs to reclaim certain improperly-disbursed funds, see infra, through the "disgorgement" or "claw back" provision contained in Customs' regulations implementing the CDSOA.[9]

On September 25, 2006, the court stayed this case until any appeals in CLTA I were resolved. The court also enjoined Customs from making any CDSOA payments "to the extent they derive from duties assessed pursuant to antidumping orders . . . upon [SSSS] products from Mexico."[10]

After the February 25, 2008 decision of the Federal Circuit in CLTA II, the CLTA I defendant-intervenor petitioned for a writ of certiorari; the Supreme Court denied certiorari on October 6. See

---

[9] 19 C.F.R. § 159.64(b)(3), instructs that:

> [o]verpayments to affected domestic producers resulting from subsequent reliquidations and/or court actions and determined by Customs to be not otherwise recoverable from the corresponding Special Account as set out in paragraph (b)(2) of this section will be collected from the affected domestic producers. The amount of each affected domestic producer's bill will be directly proportional to the total dumping and subsidy offset amounts that the affected domestic producer previously received under the related Special Account. All available collection methods will be used by Customs to collect outstanding bills, including but not limited to, administrative offset. Interest at the same rate set out at § 24.3a(c) of this chapter will begin to accrue on unpaid bills 30 days from the bill date.

[10] The next day, the court signed an order granting a consent motion for Defendant-Intervenors to intervene pursuant to USCIT R. 24(b).

Court No. 06-00236                                                      Page 7

U.S. Steel Corp. v. Canadian Lumber Trade Alliance, 129 S. Ct. 344 (2008). By the terms of this court's September 25, 2006 order, as amended by its November 12, 2008 order, the stay in this matter has now been lifted but the preliminary injunction remains in force.[11]

On November 11, 2008, Plaintiffs filed their current Motion for Leave to Amend Complaint. Plaintiffs' motion supplemented their original complaint, which sought disgorgement of "payments announced on December 17, 2004 and November 29, 2005 of AD duties that had been assessed on imports of [SSSS] products from Mexico" covered by the antidumping duty order. Pls.' Compl. 10. In their proposed amended complaint, Plaintiffs ask the court to order Defendant-Intervenors to "return to the United States, together with applicable interest" all CDSOA distributions of duties assessed under the antidumping order. Pls.' [Proposed] Amended Compl. ¶ 61. Furthermore, Plaintiffs introduce their newly-asserted cause of action for unjust enrichment, against Defendant-Intervenors, "under federal common law and applicable state common law." Id. ¶ 63.

---

[11] In accordance with the court's September 25, 2006 order, the stay expired with the Supreme Court's denial of certiorari on October 6. Although the injunction was to last "until two weeks after the final judgment of the Court of International Trade, including any appeals to the United States Court of Appeals for the Federal Circuit or the Supreme Court" in CLTA I, the court ordered, on November 12, 2008, that the injunction "shall be and remain in effect until further order of the court." As such, Defendants are still currently enjoined from disbursing or offsetting the relevant Byrd Amendment funds.

Court No. 06-00236                                                    Page 8

Both the government and Defendant-Intervenors object to Plaintiffs' motion, claiming lack of jurisdiction and futility.

**III.**

Plaintiffs' original complaint contains causes of action seeking declaratory and permanent injunctive relief pursuant to 5 U.S.C. § 706.[12]

The court has jurisdiction over Plaintiffs' complaint pursuant

---

[12] Under the Administrative Procedure Act ("APA"), "[t]he reviewing court shall":

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. § 706. Section 706 relief stems from Plaintiffs' right of review of agency action pursuant to 5 U.S.C. § 702.

Court No. 06-00236                                                    Page 9

to 28 U.S.C. § 1581(i).[13] See CLTA I, 425 F. Supp. 2d at 1332. With jurisdiction under section 1581(i) comes the power to fashion appropriate relief. See 28 U.S.C. §§ 1585, 2643. However, "a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties." Finley v. United States, 490 U.S. 545, 556 (1989). Plaintiffs' unjust enrichment cause of action, against Defendant-Intervenors, is not stated against the government; consequently, section 1581 cannot supply jurisdiction for this cause of action.[14]

---

[13] Section 1581(i) reads:

> the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
>
> > (1) revenue from imports or tonnage;
> >
> > (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> >
> > (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> >
> > (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

[14] Plaintiffs likewise may not invoke 28 U.S.C. § 1583 jurisdiction. See Giorgio Foods, Inc. v. United States, __ CIT __, __, 515 F. Supp. 2d 1313, 1322 (2007). The unjust enrichment

Court No. 06-00236                                                    Page 10

Plaintiffs assert that the court has pendent and/or ancillary jurisdiction[15] over the unjust enrichment cause of action because that action has a "close nexus" to Plaintiffs' causes of action against the government. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966); see also Morris Costumes, Inc. v.

---

cause of action does not involve a co-party, see Augustin v. Mughal, 521 F.2d 1215, 1216 (8th Cir. 1975) (per curiam) ("A cross-claim is one asserted against a co-party. . . . Co-parties are persons on the same side in the principal litigation" (citations omitted)), does not respond to an opposing party's affirmative claim, see Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella, 350 F.3d 73, 82 (2d Cir. 2003) ("A counterclaim, by definition, is a 'claim for relief asserted against an opposing party after an original claim has been made.'" (quoting Black's Law Dictionary 353 (7th ed. 1999) (emphasis in original)) (citing 3 James Wm. Moore et al., Moore's Federal Practice ¶ 13.90[2][a] (3d ed. 1997) ("Only defending parties may assert counterclaims"))), and does not assert a third-party claim against a nonparty. See USCIT R. 14(b).

[15] Pendent and ancillary jurisdiction are "closely related concepts." Old Republic Ins. Co. v. United States, 14 CIT 377, 381, 741 F. Supp. 1570, 1574 (1990) (citing Aldinger v. Howard, 427 U.S. 1, 13 (1976) with regard to the cases that come before the court). Pendent jurisdiction "concerns the adjudication of a plaintiff's state claims appended to a federal cause of action." Id. (citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370 (1978)). Ancillary jurisdiction "is generally understood as jurisdiction over those matters that are incidental to the primary claims in a case," id. (quoting Sederquist v. Court, 861 F.2d 554, 557 (9th Cir. 1988); 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3523 (2d ed. 1984)), and usually "involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court." Id. (quoting Kroger, 437 U.S. at 376). Despite the fact that the U.S. Supreme Court considers these concepts as "discrete," Aldinger, 427 U.S. at 12, the Court has "declined to decide if there are any 'principled' differences between ancillary and pendent jurisdiction." United States v. Tabor, 9 CIT 233, 237 n.5, 608 F. Supp. 658, 662-63 n.5 (1985) (quoting Kroger, 437 U.S. at 370 n.8).

Court No. 06-00236 Page 11

United States, __ CIT __, __, 465 F. Supp. 2d 1345, 1350-51 (2006); Old Republic Ins., 14 CIT at 381-83, 741 F. Supp. at 1574-76; United States v. Mecca Export Corp., 10 CIT 644, 646-47, 647 F. Supp. 924, 926-27 (1986); Tabor, 9 CIT at 235-38, 608 F. Supp. at 660-64; United States v. Gold Mountain Coffee, Ltd., 8 CIT 247, 248-50, 597 F. Supp. 510, 513-15 (1984). This much of Plaintiffs' argument is correct.

At the same time, in order for a federal court to have pendent jurisdiction, the pendent claim must meet two conditions. The claim must not be one subject to the exclusive jurisdiction of another court, and:

> the relationship between that claim and the state claim [must] permit[] the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

Gibbs, 383 U.S. at 725 (footnotes and internal citation omitted) (emphasis added). In other words, "the connection between the main proceedings and the pendent claim must be such that the exercise of pendent jurisdiction is 'necessary to the just resolution of the main proceeding.'" Old Republic Ins., 14 CIT at 381, 741 F. Supp. at 1575 (quoting Tabor, 9 CIT at 237, 608 F. Supp. at 662).

Similarly, "the power to exercise ancillary jurisdiction also

requires, inter alia, a close nexus between the ancillary matter and the primary claim." Id. (citing Kroger, 437 U.S. at 376) (emphasis added).  Generally, a court has ancillary jurisdiction over claims which secure or preserve the court's judgment for the claim over which the court has direct federal jurisdiction. Local Loan Co. v. Hunt, 292 U.S. 234, 239 (1934) ("That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled. And this, irrespective of whether the court would have jurisdiction if the proceeding were an original one. The proceeding being ancillary and dependent, the jurisdiction of the court follows that of the original cause, and may be maintained without regard to the citizenship of the parties or the amount involved. . . ." (citations omitted)).  Four criteria circumscribe the exercise of ancillary jurisdiction:

> (1) the ancillary matter arises from the same transaction that is the basis of the main proceeding, or arises during the course of the main matter, or is an integral part of the main matter; (2) the ancillary matter can be determined without a substantial new fact finding proceeding; (3) determination of the ancillary matter will not deprive a party of a substantial procedural or substantive right; and (4) the ancillary matter must be resolved to protect the integrity of the main proceeding or to insure that disposition of the main proceeding will not be frustrated.

Old Republic Ins., 14 CIT at 382, 741 F. Supp. at 1575; Gold Mountain Coffee, 8 CIT at 249, 597 F. Supp. at 514.

Court No. 06-00236                                                Page 13

The exercise of pendent and ancillary jurisdiction, however, is not a matter of Plaintiffs' right, but rather is a matter of the court's exercise of its discretion. <u>Gibbs</u>, 383 U.S. at 726 ("That power need not be exercised in every case in which it is found to exist. . . . Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. . . ." (footnote and citation1 omitted)); <u>Old Republic Ins.</u>, 14 CIT at 382-83, 741 F. Supp. at 1576 ("As doctrines of discretion, pendent and ancillary jurisdiction need not be exercised in every case where the trial court finds it has the power to do so." (citations omitted)).

After considering these jurisprudential factors in the case at hand, the court declines to exercise its pendent and/or ancillary jurisdiction to entertain Plaintiffs' unjust enrichment cause of action. In essence, here, in pursuing their disgorgement claim, Plaintiffs sue as a "private attorneys general,"[16] under 5 U.S.C. § 702, to enforce allegedly unenforced governmental obligations; Plaintiffs' complaint invokes the court's injunctive power, under the APA, to cure Customs' action in distributing, and inaction in

---

[16] <u>See</u> <u>Ass'n of Data Processing Serv. Orgs., Inc. v. Camp</u>, 397 U.S. 150, 153 n.1 (1970); <u>Nat'l Fed'n of Fed. Employees v. Cheney</u>, 883 F.2d 1038, 1052 (D.C. Cir. 1989); <u>Scanwell Labs., Inc. v. Shaffer</u>, 424 F.2d 859, 864 (D.C. Cir. 1970).

Court No. 06-00236                                                    Page 14

failing to recoup, unlawful Byrd Amendment payments.  Put differently, Plaintiffs' allegations in their complaint have no substance except to the extent that it was illegal and an abuse of Customs' discretion for Customs to make the disbursements or to fail to require reimbursement of the disbursements.  But Plaintiffs' causes of action, pursuant to 5 U.S.C. § 706, seeking declaratory and injunctive relief to address this alleged agency action and inaction, afford complete remedy to Plaintiffs in this matter.  Plaintiff's unjust enrichment cause of action is therefore duplicative.  Moreover, Plaintiffs have failed to demonstrate to the court that the unjust enrichment cause of action is "necessary" to "protect the integrity," or to accomplish the "just resolution," of the main APA proceeding.  This is true, not only because Plaintiffs' APA causes of action provide complete relief, but also because Plaintiffs' complaint, at its core, is not against Defendant-Intervenors, it is against the government.  Therefore, the court will deny Plaintiffs' motion for leave to amend its complaint to add an unjust enrichment cause of action against Defendant-Intervenors.

**IV**.

Plaintiffs also seek to amend their complaint to add the following request for relief to their APA cause of action seeking recoupment of past Byrd Amendment disbursements:

> Plaintiffs seek an order from this Court requiring [Defendant-Intervenors] to return to the United States,

      together with applicable interest, all distributions of duties assessed on imports of [SSSS] products from Mexico that they received pursuant to the CDSOA.

Pls.' [Proposed] Amended Compl. ¶ 61. However, recent legislation has removed Customs' power, authority and obligation to recoup these CDSOA funds, and thus has rendered moot Plaintiffs' claim for injunctive relief.

      Specifically, in February 2009, about two and one half years after Plaintiffs filed their action, Congress passed the "ARRA." Section 1701 of the ARRA, entitled "Prohibition on Collection of Certain Payments Made Under the [CDSOA]," prohibits, "[n]otwithstanding any other provision of law," both "the Secretary of Homeland Security" as well as "any other person" from "requir[ing] repayment of, or attempt[ing] in any other way to recoup, any payments":

    of antidumping or countervailing duties made pursuant to the [CDSOA] that were–

        (1) assessed and paid on imports of goods from countries that are parties to [NAFTA]; and

        (2) distributed on or after January 1, 2001, and before January 1, 2006.

Id. § 1701(a)-(b), 123 Stat. 366. Moreover, section 1701 also requires the Secretary of Homeland Security, "[n]ot later than the date that is 60 days after the date of the enactment of this Act," to "refund any repayments, or any other recoupment, of payments" described above. Id. § 1701(c), 123 Stat. 366. Based upon the record currently before the court, all CDSOA distributions at issue

Court No. 06-00236                                                    Page 16

in Plaintiffs' complaint are covered by section 1701.[17]  This issue

---

[17] See Def.-Intervenors' Supplemental Resp. Br. on Issues Related to Pl.'s Mot. to Amend Compl. 13.  Plaintiffs have not presented the court any evidence to the contrary. Thus, the only live issue in this matter involves a prohibition on further disbursements.

This fact becomes clear, first, because Plaintiffs filed their summons challenging the relevant antidumping duty order A-201-822 on July 21, 2006, and thus any viable cause of action accrued on or after July 21, 2004.  The court's preliminary injunction stopped CDSOA disbursements to Defendant-Intervenors as of September 25, 2006 - almost nine months after January 1, 2006.

In addition, according to Customs's CDSOA Fiscal Year 2006 Report, there were no disbursements for A-201-822 in the 2006 fiscal year (i.e., October 1, 2005 through September 30, 2006). See U.S. Customs and Border Protection, FY 2006 CDSOA Annual Disbursement Report (Nov. 30, 2006), available at http://www.cbp.gov/linkhandler/cgov/trade/priority_trade/add_cvd/cont_dump/cdsoa_06/fy_06_report/06_annual_rpt_web.ctt/06_annual_rpt_web.pdf (last visited Apr. 21, 2009); U.S. Customs and Border Protection, Updated FY 2006 CDSOA Annual Disbursement Report (Mar. 5, 2007), available at http://www.cbp.gov/linkhandler/cgov/trade/priority_trade/add_cvd/cont_dump/cdsoa_06/fy_06_report/fy06_disburse.ctt/fy06_disburse.pdf (last visited Apr. 21, 2009).

Customs placed this money in a clearing account, and money has been added to that clearing account as the 2007 Byrd Amendment deadline passed and the relevant imports have been and continue to be finally liquidated. See U.S. Customs and Border Protection, FY 2006 Clearing Account Balances as of October 1, 2006 (Nov. 30, 2006), available at http://www.cbp.gov/linkhandler/cgov/trade/priority_trade/add_cvd/cont_dump/cdsoa_06/fy_06_report/06_clearing_account_rpt.ctt/06_clearing_account_rpt.pdf (last visited Apr. 21, 2009); see also U.S. Customs and Border Protection, FY 2006 Clearing Account Balances as of October 1, 2007 (Dec. 5, 2007), available at http://www.cbp.gov/linkhandler/cgov/trade/priority_trade/add_cvd/cont_dump/cdsoa_07/fy2007_annual_rpt/uncollected_duties_rpt07.ctt/clearing_acct_bal_rpt07.pdf (last visited Apr. 21, 2009);  U.S. Customs and Border Protection, FY 2006 Clearing Account Balances as of October 1, 2008 (Jan. 15, 2009), available at http://www.cbp.gov/linkhandler/cgov/trade/priority_trade/add_cvd/cont_dump/cdsoa_08/fy08_annual_rep/section3_balances.ctt/section3_balances.pdf (last visited Apr. 21, 2009).

The last disbursements made pursuant to the A-201-822

is therefore moot.

More specifically, in order to support federal court jurisdiction, the Constitution requires the existence of an actual case or controversy at every stage of litigation. U.S. Const. art. III, § 2; Deakins v. Monaghan, 484 U.S. 193, 199 (1988); Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974). A cause of action becomes moot, and thus divests the court of jurisdiction, "if an event occurs [pending review] that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Plaintiffs' APA cause of action for additional injunctive relief asks the court to compel Customs' recoupment of allegedly illegally-disbursed CDSOA funds. But "the only agency action that can be compelled under the APA is action legally required." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004) (emphasis in original); id. at 64 ("a claim under [APA section 706] can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take" (emphasis in original)). The ARRA now prevents Customs from recouping the CDSOA

---

dumping order were made, at the latest, by the end of fiscal year 2005. See U.S. Customs and Border Protection, FY 2005 CDSOA Annual Disbursement Report (Nov. 29, 2005), available at http://www.cbp.gov/linkhandler/cgov/trade/priority_trade/add_cvd/cont_dump/cdsoa_05/fy_2005_annual_report/2005_annual_disbursement.ctt/2005_annual_disbursement.pdf (last visited Apr. 21, 2009).

payments. As a result, the court may not now order Customs or hold Customs accountable to recoup these funds; Customs is no longer "legally required" to do so, and, indeed, is statutorily precluded from doing so.

Because the court cannot grant the injunctive relief Plaintiffs request pursuant to their section 706 cause of action, this claim is moot. Thus, it would be "futile" for the court to allow Plaintiffs to amend this cause of action. See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Tavory v. NTP, Inc., 297 F. App'x 976, 984 (Fed. Cir. 2008) ("Leave to amend may properly be denied where the amendment would be futile." (citation omitted)); Net MoneyIN, Inc. v. Verisign, Inc., 545 F.3d 1359, 1373 (Fed. Cir. 2008) ("A district court acts within its discretion to deny leave to amend when amendment would be futile. . . ." (quoting Chappel v. Lab. Corp. of America, 232 F.3d 719, 725-26 (9th Cir. 2000))). Plaintiffs' motion for leave to amend its section 706 claim for additional injunctive relief is therefore denied.

## ORDER

Upon consideration of Plaintiff's Motion for Leave to Amend Complaint, it is hereby ORDERED that Plaintiffs' motion is DENIED.

 /s/ Donald C. Pogue 
Donald C. Pogue, Judge

Dated: May 13, 2009
      New York, New York

# NOTICE OF ENTRY AND SERVICE

    This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

    Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

    Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

                                                   Tina Potuto Kimble
                                                   Clerk of the Court

Date: _____     By: _____
                                                                              Deputy Clerk